**A F F I D A V I T**

STATE OF WEST VIRGINIA

COUNTY OF KANAWHA, to-wit:

    I, Tana Austin, being first duly sworn, do hereby depose and state as follows:

## INTRODUCTION

    1.    I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since March 2023. I am currently assigned to the ATF Louisville Field Division, Charleston, West Virginia Field Office.

    2.    I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the following devices, specifically:

    i.    Device 1: iPhone, blue in color, bearing model number: A2849 as described in Attachment "A";

    ii.    Device 2: TCL cellular telephone, black in color, bearing IMEI: 016053008359870, as described in Attachment "A"; and,

    iii.    Device 3: Blue in color cellular telephone, bearing AT&T logo as described in Attachment "A," and the extraction from all three cellular telephones of

electronically stored information as described in Attachment "B."

3. The contents of Attachment "A," and Attachment "B," to this Affidavit and application for a search warrant are hereby incorporated by reference.

4. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses.

5. Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for this warrant.

## STATUTORY AUTHORITY

6. This investigation concerns alleged violations of Title 21, U.S.C. § 841(a)(1) – Manufacture, Distribute, or Possess with Intent to Manufacture or Distribute a Controlled Substance, and Title 18, U.S.C. § 922 (g)(1) – Felon in Possession of a Firearm.

## AFFIANT'S TRAINING AND EXPERIENCE

7. Your Affiant is currently employed as a Special Agent with the ATF.

8. Your Affiant graduated from the Federal Law Enforcement Training Center, where I learned basic criminal investigation

techniques. In addition, I graduated from the ATF National Academy, where I learned about federal firearms laws, federal explosives laws, bomb scene investigations, and arson investigations.

9. Your Affiant has received investigative training, conducted and participated in investigations of violations of federal criminal laws, including those relating to firearms and controlled substances. These acts commonly involve the criminal use and transfer of firearms, illicit drug trafficking, acts of arson, criminal possession or use of explosives, and/or destructive devices. I have also discussed with other law enforcement officers about the methods and practices used by illegal drug distributors.

10. In my current position as an ATF Special Agent assigned to the Charleston, West Virgnia Field Office, my primary responsibilities include investigating individuals or groups who have committed violations of the federal firearms and narcotics laws. Within that role, my job duties include, but are not limited to:

   a. Functions as a case agent, which entails the supervision of specific investigations;

   b. Interviewing witnesses relative to the illegal trafficking of drugs and firearms and the distribution of monies and assets derived from these illegal acts;

3

    c. Functioning as a surveillance agent observing and recording movements of persons trafficking in drugs and firearms and those suspected of trafficking in drugs and firearms; and,

    d. Drafting, obtaining and executing search warrants.

## AFFIANT'S KNOWLEDGE OF CELLULAR TELEPHONES AND THEIR USE IN CRIMINAL ACTIVITY

11. Your Affiant is personally, and professionally, familiar with cellular telephones or mobile telephones.

12. I know that a cellular telephone or mobile telephone is a handheld wireless device used primarily for voice communications between parties.

13. I am aware that cellular telephones usually include a "call log," which records the telephone number, date, and time of calls made to and from the cellular telephone.

14. In addition to enabling voice communications, I know that cellular telephones now offer a broad range of functions, which include, but are not limited to: storing names and phone numbers in electronic address books or contact lists; sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving videos; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; accessing and

4

downloading information from the internet; and sending, receiving, and storing GPS coordinates of a phones location.

15. Based on my knowledge, training, experience, and conversations with other law enforcement officers, I know that cellular telephones, such as the devices described in Attachment "A," can store electronic information for long periods of time.

16. Based on my knowledge, training experience, and conversations with other law enforcement officers, I know it is a common practice for drug traffickers to use and keep cellular telephones in order to facilitate their drug trafficking business. Cellular telephones allow drug traffickers to remain in close and nearly instantaneous communication with their customers and suppliers.

17. Based on my knowledge, training, experience, and conversations with other law enforcement officers, I know it is common for cellular telephones used by drug distributors and users to contain evidence of drug trafficking. This evidence includes call logs, text messages, stored emails, contact lists, photographs and video images of drugs, drug proceeds, and drug trafficking paraphernalia and activity, and other information.

18. Based on my training, knowledge, experience, and conversations with other law enforcement officers, I know that cellular telephones are used to communicate with illegal drug sources and conspirators as it pertains to firearms and narcotics

5

trafficking. These devices may possess information for how the narcotics and firearms were acquired and may identify other conspirators known and unknown.

19. Based on my training, knowledge, experience, and conversations with other law enforcement officers, I know the electronic memories of cellular telephones, including social media applications, have been found to contain evidence of illegal firearm possession, including communications regarding when and how an illegal firearm was obtained, who obtained the illegal firearm for the possessor, and the motivation for possessing the illegal firearm.

20. Based on my training, knowledge, experience, and conversations with other law enforcement officers, I know that people who sell or possess firearms illegally frequently take or cause to be taken photographs or other images of themselves in possession of firearms, their associates, their property and assets with cellular telephones. They also frequently utilize cellular telephones as a way to communicate with other individuals in order to purchase or sell firearms and illegal drugs.

21. Based on my knowledge, training, experience, and conversations with other law enforcement officers, I know that drug traffickers also utilize applications, sometimes end to end encryption applications, to communicate and conduct their drug trafficking business. Such applications include Facebook,

Facebook Messenger, WhatsApp, Signal, Telegram, Instagram, TikTok, etc. Such applications often have the communications stored in the application on the target's cellular device.

## PROBABLE CAUSE

22. On or about June 11, 2024, Charleston Police Officer J.W. Browning (Patrolman Browning), initiated a traffic stop of the driver of a 2011 Ford Focus in the 300 block of Virginia Street, Charleston, West Virginia, for an expired registration plate. The driver pulled over at or near the intersection of Virginia Street and Goshorn Street in Charleston, West Virginia.

23. Patrolman Browning approached on the passenger side of the Ford Focus. When Patrolman Browning arrived at the front passenger side door, he identified the driver as Robin Igo (Igo) and the front seat passenger as Brian Dunnigan (DUNNIGAN). No one else was in the vehicle. Patrolman Browning also smelled what he immediately recognized as an odor of marijuana emitting from the vehicle.

24. As Patrolman Browning was talking to DUNNIGAN and Igo at the front passenger door, he noted that a bag was underneath DUNNIGAN'S feet lying in the front passenger floorboard. After additional officers arrived, Patrolman Browning escorted Igo from the vehicle. During their brief conversation, Igo told Patrolman Browning that she had a small quantity of marijuana in her purse.

7

25.     Patrolman Browning then escorted DUNNIGAN from the front passenger seat to the front of his police vehicle. During a brief conversation with Patrolman Browning, DUNNIGAN denied having knowledge of any controlled substances or firearms in the vehicle.

26.     Patrolman Browning began a search of the vehicle. Under the front passenger seat, within arm's reach of where DUNNIGAN was seated, Patrolman Browning recovered a loaded Ruger .38 caliber revolver. Patrolman Browning further determined that the firearm was previously reported stolen to the Dunbar Police Department. Patrolman Browning removed the bag from the front passenger floorboard and began searching it outside of the vehicle.

27.     Inside of the bag, approximately 58 grams of suspected marijuana, approximately 13 grams of suspected cocaine, approximately 9 grams of suspected cocaine base and approximately 9 grams of suspected methamphetamine were recovered. The suspected controlled substances were packaged in approximately eleven individually wrapped plastic bags. As he continued to search the bag, Patrolman Browning further recovered approximately $1350 in United States Currency, a box of clear sandwich bags, and a package of "Swerve" brand zero calorie powdered sweetener. In addition, DUNNIGAN was in possession of three cellular telephones which were recovered on his person and in the searched bag.

28. Also, in the bag with the suspected drugs and other items, Charleston Police Officers H. Childress and J. Puckett recovered DUNNIGAN'S Bureau of Prison's Identification Card which contained DUNNIGAN'S name and photograph, as well as Department of Justice Gratuity paperwork that was issued to DUNNIGAN.

29. Your affiant knows that the presence of a large amount of United States Currency in the presence of multiple bags of suspected controlled substances is consistent with proceeds from drug trafficking. Your affiant further knows that powdered sweetener is used by drug traffickers to "add" or "mix" to drugs to increase the quantity of drugs to expand the drug trafficker's profit margin. Your affiant knows that sandwich bags are used by drug traffickers to package drugs for street level distribution. Your affiant further knows that individuals who engage in street level drug distribution often possess multiple cellular phones in the course of, and to facilitate, their illegal drug trafficking business.

30. Finally, your affiant knows that street level drug traffickers possess firearms for several reasons including, but not limited to, repel a perpetrator's attempt to rob them of their drugs and drug proceeds, to deter robbery attempts, to "motivate" customers to pay for illegal drugs in a timely manner and to deter drug sources from selling them "sham" drugs or drugs of an inferior quality.

31. Igo told Patrolman Browning she knew nothing about the contents of the bag and also did not know that a firearm was present in the vehicle.

32. DUNNIGAN was convicted in the United States District Court for the Southern District of West Virginia on or about December 22, 2015, for the felony offense of Possession with Intent to Distribute 50 or more grams of Methamphetamine before the Honorable John T. Copenhaver, Jr. DUNNIGAN received a sentence of 96 months imprisonment and a term of four (4) years of supervised release. As a convicted felon, DUNNIGAN is prohibited from possessing a firearm.

## CUSTODY OF THE CELLULAR TELEPHONES

33. The Cellular Telephones described in Attachment "A" were seized by CPD during the course of the traffic stop of DUNNIGAN that occurred on June 11th, 2024. After the Cellular Telephones were seized, they remained with CPD until on or about July 22nd, 2024. The Cellular Telephones were then transferred to the custody of the ATF Charleston, West Virginia Field Office, 300 Summers Street, Charleston, West Virginia 25301, where they were placed into ATF evidence and have remained since that time.

34. In my training and experience, I know that the Cellular Telephones have been stored in a manner in which its contents are, to the extent material to this investigation, in

substantially the same state as they were when they first came into the possession of ATF.

## NATURE OF THE EXAMINATION

35. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

36. Because this warrant seeks only permission to examine the devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

37. Based on my training and experience, and the facts set forth above, I believe there is probable cause that evidence of criminal violations of Title 21, U.S.C. § 841(a)(1) – Manufacture, Distribute, or Possess with Intent to Distribute a Controlled Substance, and Title 18, U.S.C. §922 (g)(1) – Felon in Possession

of a Firearm, will be found on the devices described more completely in Attachment "A."

WHEREFORE, your Affiant submits that this affidavit supports probable cause for a search warrant authorizing the examination of the devices described in Attachment "A" to seek the items described in Attachment "B."

Further your affiant sayeth naught.

_____
Tana Austin
Special Agent, ATF

Subscribed and sworn to before me on this 31st day of July 2024.

_____
DWANE L. TINSLEY
UNITED STATES MAGISTRATE JUDGE

12